| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | U.S BANKRUPTCY COURT<br>FILED<br>CAMDEN, NJ<br>2019 JUL −9 ᴾ 3 21<br>JEANNE... |
| **Caption in Compliance with D.N.J. L.B.R. 9004-1(b)** | BY:_____ KR |
| In re:<br><br>GARCES RESTAURANT GROUP, INC., d/b/a GARCES GROUP, et al.,<br><br>                              Debtors. | Case No.: 18-19054 (JNP)<br>(Jointly Administered)<br><br>Chapter 11 |
| SPINNER FAMILY HOLDINGS, LLC., TOM SPINNER AND MARIA SPINNER,<br>                              Plaintiffs,<br><br>v.<br><br>GRG CHUBB1 LLC, GRGAC4 LLC, GRG2401 LLC, JOSE GARES, THE GARCES GROUP, JOHN FIORETTI, WFP RETAIL CO., AND UBS FINANCIAL SERVICES INC.,<br><br>                              Defendants. | Adv. Pro. No. 18-1507 (JNP)<br><br>Judge: Jerrold N. Poslusny, Jr. |

## OPINION GRANTING IN PART, DENYING IN PART, THE PLAINTIFFS' MOTION TO AMEND THE COMPLAINT, AND TO REMAND TO STATE COURT

Before the Court is the motion to amend the complaint and remand the adversary proceeding to state court (the "Motion"), filed on behalf of the plaintiff Spinner Family Holdings ("SFH") and the proposed additional plaintiffs VWONE LLC ("VWONE"), TJJ REAL CO LTD ("TJJ"), GRGNY1 LCC ("Amada, NY"), GARCES BPNY HOLDINGS LLC ("BPNY"), and GARCES REVEL HOLDINGS ("Revel Holdings" and, collectively with the other plaintiffs and proposed plaintiffs the "Plaintiffs"). Dkt. No. 8. Jose Garces ("Garces"), John Fioretti ("Fioretti") and the Garces Restaurant Group, Inc. ("Garces Group") filed opposition to the Motion and a cross-motion to dismiss the complaint (the "Cross-Motion"). Dkt. No. 16. For the

reasons detailed below, the Court will grant the Motion in part, deny it in part, and remand the remaining counts to the state court. The Court will deny the Cross-Motion, without prejudice.

## Background

SFH, along with Tom and Maria Spinner, filed a complaint (the "Action") in the Superior Court of New Jersey, Monmouth County (the "State Court") naming Garces, Fioretti, the Garces Group, GRG Chubb1 LLC, GRGAC4 LLC, WFP Retail Co, and UBS Financial Services Inc. as defendants. Dkt. No. 1. Following this, beginning on May 2, 2018, the Garces Group and multiple other corporate entities, including several of the named defendants in the Action filed petitions for relief pursuant to Title 11 of the United States Code (the "Bankruptcy Code"). Dkt. No. 1 in Case No. 18-19054 ("Main Case"). The Action was removed to Federal Court and referred to this Court on September 28, 2018. Dkt. No. 1.

On July 11, 2018, this Court entered an order in the Main Case approving the sale of the assets (the "Sale Order") of the following debtors: GRGAC1, LLC, ("GRGAC1") d/b/a Amada, GRGAC2, LLC, ("GRGAC2") d/b/a Village Whiskey, GRGAC3, LLC, ("GRGAC3") d/b/a Distrito Cantina, GRGAC4, LLC ("GRGAC4"), Garces Group, Latin Valley 2130, LLC, La Casa Culinary, LLC, ("LCC") d/b/a Amada Restaurant ("Amada PA"), Garces Catering 300, LLC d/b/a Garces Catering, Latin Quarter Concepts, LLC ("LQ") d/b/a Tinto d/b/a Village Whiskey, Urban Farm, LLC d/b/a JG Domestic, GR300, LLC ("GRG300") d/b/a Volver, GRG2401, LLC, ("GRG2401") GRG Chubb1, LLC ("Chubb1"), GRGKC1, LLC, GRGWildwood, LLC, GRGNY2, LLC, GRGDC2, LLC d/b/a Latin Market, GRGBookies, LLC, and GRGAC5, LLC, (collectively, the "Debtors"). Main Case Dkt. No. 403.

As part of the Sale Order, this Court approved the release of all claims by and among the Debtors, and Jose Garces, M&T Bank ("M&T"), and 3BM1, LLC ("Buyer"). The releases state:

11. <u>Releases Among M&T Bank, the Buyer, the Committee and/or Jose Garces</u>: Except for the obligations of the parties under the Agreement, the Term Sheet or this Order, effective as of the Closing, (a) M&T Bank, (b) the Buyer, (c) the Committee and (d) Jose Garces and each of them forever release, waive and discharge any and all liabilities, claims and causes of action, including without limitation, breach of fiduciary duty, avoidance actions, successor liability and fraudulent transfer claims, by among or against each other, and/or their respective current, and former officers, directors, stockholders, partners, managers, employees, agents, affiliates, successors, assigns, consultants, attorneys and their professionals retained in connection with this matter as applicable, whether pursued directly, derivatively, or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Closing.

12. <u>Releases by the Debtors and the Debtors' Estates</u>: Except for the obligations of the parties under the Agreement, the Term Sheet or this Order, effective as of the Closing, the Debtors and the Debtors' Estates forever release, waive and discharge any and all liabilities, claims and causes of action, including without limitation, breach of fiduciary duty, avoidance actions, successor liability and fraudulent transfer claims, against (a) M&T Bank, (b) the Buyer, (c) the Committee and (d) Jose Garces and each of them, and/or their respective current, and former officers, directors, stockholders, partners, managers, employees, agents, affiliates, successors, assigns, consultants, attorneys and their professionals retained in connection with this matter as applicable, (including the Debtors and the Debtors' Estates, each a "Settling Party," and collectively, the "Settling Parties"), whether pursued directly, derivatively, or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Closing.

13. <u>Releases of the Debtors and the Debtors' Estates</u>: Except for the obligations of the parties under the Agreement, the Term Sheet or this Order, effective as of the Closing, (a) M&T Bank, (b) the Buyer, (c) the Committee and/or (d) Jose Garces forever release, waive and discharge any and all liabilities, claims and causes of

> action, including without limitation, breach of fiduciary duty,
> avoidance actions, successor liability and fraudulent transfer
> claims, against the Debtors and/or the Debtors' estates, and/or their
> respective current, and former officers, directors, partners,
> managers, employees, agents, consultants, attorneys and their
> professionals retained in connection with this matter as applicable,
> whether pursued directly, derivatively, or otherwise, liquidated or
> unliquidated, fixed or contingent, matured or unmatured, known or
> unknown, foreseen or unforeseen, then existing or thereafter
> arising, in law, equity, or otherwise, that are based in whole or in
> part on any act, omission, transaction, event, or other occurrence
> taking place on or prior to the Closing; provided, however, that the
> foregoing release given by Garces in not intended to and shall not
> be construed to release any indemnification claims of Garces to the
> extent such claims are covered by available insurance coverage.

Main Case Dkt. No. 403 ¶¶ 11-13. However, to ensure that the Sale Order did not infringe upon

the rights of third parties, in particular SFH and the Spinners, a paragraph was added carving out

(the "Carveout") of this settlement language, any direct claims parties may have against M&T,

Garces, the Buyer, or any other party. The Carveout states:

> Nothing herein shall be construed to (a) affect, impair, or prejudice
> any direct claims, causes of action, and/or defenses that any non-
> Settling Party (including, but not limited to, Jim Sorkin, Julius
> Silvert, Inc., Thomas Spinner, and Spinner Family Holdings, LLC)
> may have against any Settling Party or other non-Settling Party in
> any manner, whether now existing or hereafter arising (the "Third
> Party Claims"), all of which are expressly retained; or (b) have any
> preclusive effect on the Third Party Claims for any reason
> whatsoever including, but not limited to, under the doctrines of res
> judicata and collateral estoppel.

Id. ¶ 14.

SFH then filed this Motion to: (a) amend the complaint and (b) remand this Action the

State Court. Dkt. No. 8. The Motion attaches a proposed amended complaint (the "Proposed

Amended Complaint") which includes twenty-six causes of action against: Garces, Fioretti,

Robert Keddie ("Keddie"), Yousaf Hassan ("Hassan"), Condor Latin Concepts, LLC., GRG

Dilworth, LLC., GRGNY1, LLC. ("Amada, NY"), Luna Farms, LLC., GRGFC1 ("Buena

4

Onda"), M&T, and John Does 1-10 (collectively, the "Defendants"). The Proposed Amended Complaint also removes Tom and Maria Spinner as plaintiffs, and adds the proposed additional plaintiffs listed above.

Defendants Garces, Fioretti, and the Garces Group filed the Cross-Motion primarily arguing that the Plaintiffs lack standing to bring the claims in the Proposed Amended Complaint, and that the claims are futile. Dkt. No. 16. The Defendants argue that the claims are derivative claims owned by the corporations, and so each of these claims is barred by the Sale Order. The Defendants do not oppose remanding any remaining counts to the State Court. Id. M&T also filed opposition (the "M&T Opposition") to the Motion. Dkt. No. 15. SFH's reply argues that a motion to dismiss a presently pending amended complaint is procedurally improper. Dkt. No. 18. It also argues that the Cross-Motion is incorrect in arguing that the Sale Order released these claims, and that the proposed claims are direct claims, not derivative. Finally, SFH argues that M&T lacks standing to oppose the Motion, as it is not presently a party to the Action. Dkt. No. 20.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(N), (O).

### Discussion

### A.    Scope of This Decision

The Proposed Amended Complaint does not name any of the Debtors as defendants or as proposed plaintiffs. Dkt. No. 8. However, the Defendants argue that many of the claims raised in the Proposed Amended Complaint are not direct claims but are instead derivative claims which belong to the Debtors and were released under the Sale Order. See Dkt. No. 16. Additionally, the

Defendants argue that the claims in the Proposed Amended Complaint are futile, either because the Plaintiffs lack standing or because they fail to state a cause of action. Id. Because much of the Proposed Amended Complaint involves actions between non-debtor parties, the Court must first determine both its jurisdiction over this Action, and the extent to which it is proper to exercise any such jurisdiction.

"Like all federal courts, bankruptcy courts are courts of limited subject-matter jurisdiction." Smalis v. City of Pittsburgh Sch. Dist., 556 B.R. 703, 709 (W.D. Pa. 2016), aff'd sub nom. In re Smalis, 684 F. App'x 109 (3d Cir. 2017). Therefore, bankruptcy courts have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them. In re Uber, 443 B.R. 500, 504 (Bankr. S.D. Ohio 2011). Of course, a bankruptcy court always has authority to determine whether it has subject matter jurisdiction over an adversary proceeding filed in a case before the court. In re Affirmative Ins. Holdings, Inc., 565 B.R. 566, 571 (Bankr. D. Del. 2017) (citing Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371 (1940) (explaining that a federal court has authority to determine whether it has jurisdiction over a dispute)).

Bankruptcy jurisdiction under 28 U.S.C. § 1334 includes the power to adjudicate matters "arising in," "arising under," or "related to" a case under Title 11. 28 U.S.C. §§ 1334(b), 157(a). Celotex Corp. v. Edwards, 514 U.S. 300, 300 (1995). While actions "arising in" and "arising under" are based on rights explicitly within the Bankruptcy Code or that exist only because the bankruptcy case was filed, "related to" matters generally encompass actions under state law that are brought into the bankruptcy because of their impact on the size of the debtor's estate. In re Conseco, Inc., 330 B.R. 673, 681 (Bankr. N.D. Ill. 2005). The test for whether a bankruptcy court has "related to" jurisdiction is if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re Resorts Int'l, Inc., 372 F.3d 154,

6

164 (3d Cir. 2004) (citing In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir.1991)).

Moreover, proceedings involving non-debtors are frequently considered "appropriate fare for abstention or remand to courts which have jurisdiction over the non-debtors." In re Sciortino, 114 B.R. 423, 427 (Bankr. E.D. Pa. 1990) (citing In re Joshua Slocum, Ltd., 109 B.R. 101, 107 (E.D.Pa.1989); In re Futura Industries, Inc., 69 B.R. 831, 834–35 (Bankr.E.D.Pa.1987)). This is because "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." Celotex Corp. v. Edwards, 514 U.S. 300, 308 n. 6 (1995) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984)). Thus, "a proceeding involving non-debtors will not be found to be related . . . unless the proceeding involves property in which the debtor has a legally cognizable interest." In re Industrias Vassallo, Inc., 2015 WL 4626763, at *4 (Bankr. D.P.R. 2015) (citing In re Holland Indus., Inc., 103 B.R. 461, 469 (Bankr. S.D.N.Y. 1989)). Additionally, bankruptcy courts have core subject matter jurisdiction to interpret and enforce their own orders. In re Allegheny Health Educ. & Research Found., 383 F.3d 169, 176 (3d Cir. 2004) (citing In re Marcus Hook, 943 F.2d at 267 (motion to enforce bankruptcy sale order is core proceeding)).

As such, this Court's analysis of the Motion and Cross-Motion is limited to whether the claims brought in the Proposed Amended Complaint violate the Sale Order or would have an effect on the estate of any of the Debtors. To the extent these claims may fail for any other reason such determination should be made by the State Court. The Court will not rule on whether these proposed amended claims would be futile, or whether the Plaintiffs lack standing to bring these claims, except to the extent that the claims belong to the Debtors or violate the releases in the Sale Order. Rather, the Court finds it appropriate to grant Plaintiffs' Motion to remand the Action to State Court for further determination.

B.      Standard for Motion to Amend

Under Federal Rule of Civil Procedure ("Rule") 15(a), made applicable by Federal Rule

of Bankruptcy Procedure 7015, leave to amend pleadings shall be "freely give[n]" when "justice

so requires." Fed. R. Civ. P. 15(a)(2). "In evaluating challenges to the denial of opportunity to

amend we have held consistently that leave to amend should be granted freely." Dole v. Arco

Chem. Co., 921 F.2d 484, 486–87 (3d Cir. 1990). A court may, however, deny a motion to

amend on the grounds of "undue delay, bad faith, dilatory motive, prejudice, and futility." Shane

v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). An amendment is futile if the proposed amended

complaint includes a claim that "would fail to state a claim upon which relief could be granted."

Id. As a result, in evaluating futility, courts employ the "same standard of legal sufficiency as

applies under Rule 12(b)(6)." Id. Therefore, the Court reviews the Proposed Amended Complaint

to determine whether the individual counts would survive a Rule 12(b)(6) motion. However, as

noted above, in this case the Court's review will only address whether Proposed Amended

Complaint violates the Sale Order or impacts the Debtors or their estates. The Court will then

remand the case to State Court for it to determine all other issues related to the Action, including

amending or dismissing of the complaint.

C.      Standing of Impleaded Parties

Initially, the Plaintiffs argue that M&T's objection to the Motion should not be

considered because they are not yet named parties to the action. Custom Pak Brokerage, LLC v.

Dandrea Produce, Inc., 2014 WL 988829, at *2 (D.N.J. 2014); Vasquez v. Summit Women's

Ctr., Inc., 2001 WL 34150397, at *1 n. 1 (D. Conn. Nov.16, 2001) ("The standing of non-parties

to challenge a motion for leave to file an amended complaint that seeks to add them is, at best,

dubious.") (citing 3 James Wm. Moore et al., Moore's Federal Practice § 14. 21[2] (3d ed.1999)).

However, the Court has the inherent authority to review any proposed amendment for futility and

to ensure the movant has met its burden in filing the motion to amend the complaint. Werner Deconstruction, 2017 WL 1591866, at *7 (citing Worseter-Sims v. Tropicana Entm't, Inc., 46 F.Supp.3d 513, 517 (D.N.J. 2014)). As such, this question need not be addressed as the scope of this decision is limited only to a determination of whether the Proposed Amended Complaint violates the Sale Order or involves assets of the Debtors' estates.

### D.    Derivative Injury Rule

"The derivative injury rule holds that a shareholder . . . may not sue for personal injuries that result directly from injuries to the corporation." In re SemCrude L.P., 796 F.3d 310, 316 (3d Cir. 2015) (citing In re Kaplan, 143 F.3d 807, 811–12 (3d Cir.1998) (applying Illinois law)). The rule is premised on the legal fiction of corporate existence, in which "an injury to the corporate body is legally distinct from an injury to another person." Id. (citing Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 348 (3d Cir. 2001)). "An injury done to the stock and capital of a corporation by the negligence or misfeasance of its officers and directors" is not an injury for which a single stockholder can sue. SemCrude, 796 F.3d at 318. "Nor may claims for corporate mismanagement be brought directly." Id.

"It is well established that, absent a direct individual injury, [a] . . . shareholder of a corporation lacks standing to sue for an injury to the corporation." Kim v. M&T Bank, 2018 WL 4094839, at *3 (D.N.J. Aug. 28, 2018) (quoting Meade v. Kiddie Acad. Domestic Franchising, LLC, 501 F. App'x 106, 108 (3d Cir. 2012) (citation omitted)). "The derivative injury rule holds that a shareholder (even a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation." Kaplan, 143 F.3d at 811-12 (emphasis added). As such, direct claims by shareholders for breach of fiduciary duty based on the diminution of value of their share price are barred, given that such claims belong to the corporation and that any injury suffered by the shareholders is only incidental or indirect. City of

9

Riviera Beach Gen. Employees Ret. Sys. v. Mylan N.V., 2016 WL 4367549, at *14 (W.D. Pa. May 10, 2016), report and recommendation adopted, 2016 WL 4275822 (W.D. Pa. Aug. 12, 2016).

"To have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery." In re Ressler, 597 F. App'x 131, 135 (3d Cir. 2015) (applying Pennsylvania law). See also SemCrude, 796 F.3d at 319 ("'Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature.'") (applying Oklahoma law) (quoting Feldman v. Cutaia, 951 A.2d 727, 733 (Del. 2008) (applying Delaware law)). Essentially, under the governing law in each state in which one or more of the Defendants is incorporated, the issues are the same: who suffered the harm from the injury, and who would receive the benefit of any recovery? See Feldman, 951 A.2d at 733 (quoting Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1033 (Del. 2004)); see also City of Riviera Beach, 2016 WL 4367549, at *13; Kim, 2018 WL 4094839, at *3.

The key is the nature of the wrongs alleged, regardless of how they are framed. SemCrude, 796 F.3d at 319 (To the extent the Plaintiffs' claims are masked claims for a diminution in value of their limited partner units as a result of mismanagement, their claims are derivative of the claims.); Arent v. Distribution Scis., Inc., 975 F.2d 1370, 1373 (8th Cir.1992) ("[T]he fact that plaintiffs framed the harm as a direct fraud [does] not permit them to go forward on a claim that [i]s, at its core, derivative."). The issue is whether the plaintiff has alleged a loss of a different kind, not amount, than other investors. SemCrude, 796 F.3d at 319 (Plaintiffs are functionally indistinguishable from other investors who acted upon or forewent opportunities to

sell their shares as a result of management misrepresentations and omissions, and their "[r]espective losses differ only in amount, not in kind, making their claims derivative.")

Finally, "Because whether a suit is derivative or direct is drawn from the face of the complaint, [the court's] analysis is drawn from the [factual allegations in the complaint.]" Id. at 317-18 (citing 12B Fletcher Cyc. Corp. § 5913). See also Lipton v. News Int'l, Plc, 514 A.2d 1075, 1078 (Del.1986), disapproved of on other grounds by Tooley, 845 A.2d 1031 (Del. 2004) ("[W]e must look to the nature of the wrongs alleged in the body of the complaint, not to the plaintiff's designation or stated intention.").

In this case, the Proposed Amended Complaint raises twenty-six counts on behalf of various plaintiffs against various defendants. Broadly, these counts fall into three categories: (1) derivative claims on behalf of the Debtors, for which the Motion will be denied, with prejudice; (2) direct claims on behalf of the Plaintiffs or derivative claims on behalf of non-debtors, over which the Court does not have jurisdiction and will deny the request to amend, without prejudice and remand to the State Court; and (3) claims that are derivative on behalf of both Debtors and non-debtors for which the request to amend will be denied without prejudice, to permit the Plaintiff to replead those counts before the State Court if they so choose.

### Specific Claims

1. Derivative Claims brought on behalf of Debtors in violation of the Sale Order: Counts 14, 15 & 17

Counts Fourteen, Fifteen and Seventeen of the Proposed Amended Complaint each allege a claim for breach of fiduciary duty against Keddie and Hassan; Fioretti; and M&T, respectively in their capacity as officers or insiders of the Garces Group. Specifically, SFH claims that the defendants misappropriated funds from the entities in which SFH invested and transferred those funds to entities wholly owned by Garces. SFH alleges it suffered damages as a result including the loss of the value of its investments. Dkt. No. 8.

Although framed as direct claims brought by SFH for its injuries, these fall squarely within the SemCrude analysis of a derivative claim. The alleged loss stems from the management's wrong that reduces the value of corporation and affects all shareholders alike. See SemCrude, 796 F.3d at 319. The alleged injury is to the corporation, in the form of a loss of value and funds, it is suffered equally by all investors, and any recovery would be on a pro rata basis among all investors. These are derivative rights owned by the entities. Although SFH attempts to paint this as an individual injury by listing wrongful acts allegedly committed by Keddie, Hassan, Fioretti and M&T, the Court must look to the nature of the wrongs alleged in the body of the complaint, not to the plaintiff's designation or stated intention. SemCrude, 796 F.3d at 318 (citing Lipton, 514 A.2d at 1078); Arent v. Distribution Scis., Inc., 975 F.2d at 1373. The issue is whether the Plaintiffs alleged a loss of a different kind, not amount, than other investors. SemCrude, 796 F.3d at 319 (Plaintiffs are functionally indistinguishable from other investors injured as a result of management misfeasance, and their respective losses differ only in amount, not in kind, making their claims derivative.) "To pursue a claim on its own behalf, a creditor must show this direct injury is not dependent on injury to the estate." Matter of Buccaneer Res., L.L.C., 912 F.3d 291, 293–94 (5th Cir. 2019). Here, the ultimate injury is the loss in value of the corporations, which is an injury to each corporation, and any recovery would be owed to the investors on a pro rata basis. Despite SFH claiming to be the plaintiff, it is in fact bringing a derivative claim on behalf of the injured corporations.

These claims belong to the Debtors, which were parties to the Sale Order. Main Case Dkt. No. 403. Paragraph 12 of the Sale Order states that "the Debtors . . . forever release . . . all liabilities, claims and causes of action, including without limitation, breach of fiduciary duty . . . against (a) M&T Bank . . . and (d) Jose Garces and . . . current and former officers . . . (including the Debtors and the Debtors' Estates)." Id. ¶ 12. As such, these claims are barred. Therefore, as

12

to Counts Fourteen, Fifteen and Seventeen, the Motion is denied with prejudice. SFH may not bring any derivative claims on behalf on the Debtors against any party released by the Sale Order.

### 2.  Mixed Claims that violate the Sale Order but may be repleaded: Counts 1, 5, 6, 7, 11, 13, 16, 18

Several of the counts in the Proposed Amended Complaint bring derivative claims belonging to both Debtor and non-debtor entities. For example, Count One of the Proposed Amended Complaint is a claim for conversion of SFH's equity stake in Amada PA,[1] Tinto, Village Whiskey, GTC, Garces Revel Holdings, and GRGNY1 (Amada, NY), and is brought against Garces, Keddie, Hassan, Luna Farms LLC, GRG Dilworth, LLC, and Buena Onda. Dkt. No. 8. Specifically, SFH alleges that Garces siphoned funds from these entities and transferred those funds to himself and to other entities owned only by Garces. SFH alleges Garces accomplished this by treating all of the Garces restaurants as a single entity, rather than independent corporations.

The alleged damage is "that SFH lost all investment value in the investment entities." Dkt. No. 8 ¶ 159. This loss stems from the management's wrong that reduces the value of corporation, these injuries would be suffered equally by all investors, and recovery would be on a pro rata basis. These are derivative rights. So, although SFH is listed as the plaintiff, it is in fact bringing derivative claims on behalf of the injured corporations. In Count One, those corporations are both Debtors and non-debtors. Amada PA, Tinto, and Village Whiskey are all Debtors that have waived all claims against the Defendants, while the remaining entities listed in this count are not Debtors. See Main Case Dkt. No. 403 ¶¶ 11 – 13. To permit this count to move

---

[1] The Proposed Amended Complaint uses Amada, PA, in this count, which as noted is the d/b/a for LCC. This decision presumes Amada, PA, is the same entity as the Debtor listed in the Sale Order.

forward as it currently is pled would violate the Sale Order. As such the Plaintiffs' request to amend the complaint to include this count is denied. However, the Court does so without prejudice, to allow the Plaintiffs to amend this count to exclude all derivative claims brought on behalf of the Debtor entities. Whether the Plaintiffs have standing to bring derivative claims on behalf of the non-debtor entities is a question properly addressed by the State Court, as that action would be between non-debtors and could not conceivably affect the bankruptcy estate. Therefore, the Court will deny the Motion as to Count One without prejudice to the Plaintiffs' right to seek authorization to replead the count before the State Court, without including any claims belonging to the Debtors.

A similar analysis applies to Counts Six, Seven, Eleven, Thirteen, Sixteen, and Eighteen. Each count alleges wrongs that caused a loss of value to both Debtor and non-debtor entities. For example, Counts Six and Sixteen bring claims of aiding and abetting fraud and breach of fiduciary duty respectively, against M&T. Dkt. No. 8. The allegations in these counts include M&T having aided Garces in violating the operating agreements of Debtor and non-debtor entities by entering secured loan agreements without proper approval and self-dealing financial transactions; and that M&T assisted Garces in a scheme to consolidate the investment entities so as to deprive SFH of its ownership rights and lose the value of its investment. These allegations are very similar to those laid out Counts Fourteen, Fifteen and Seventeen, with the additional allegation that M&T helped Garces in the siphoning of funds and to enter agreements which treated all Garces run restaurants as a single entity. These additional allegations do not alter the analysis detailed above. The injury complained of is the loss in value of the investment entities. Id. The Plaintiffs' alleged injuries are derived from direct injuries to the corporations, which have waived any such claims against M&T. Therefore, the Motion is denied as to Counts Six and Sixteen of the Proposed Amended Complaint without prejudice to the Plaintiffs' right to seek

14

authorization to replead these counts before the State Court without including any claims belonging to the Debtors.

Counts Seven and Eleven also name M&T as the defendant but make allegations that M&T tortiously interfered with the contracts and business relations between SFH and the corporate entities, some of which were Debtors. Dkt. No. 8. Specifically, Count Seven alleges that LCC, LQ, GTC, VWONE, and 213T Associates were all subject to operating agreements, and that M&T enabled Garces to borrow against the assets of these entities without taking the required steps listed in those operating agreements. Count Eleven alleges that M&T procured pledges and security agreements on the assets of GRGAC1, GRGAC2, GRGAC3, GRGAC4, BPNY1, GRGNY1, GRGChubb, GRG2401 and Garces Revel Holdings, and in doing so interfered with SFH's investment rights in those assets and "deprived SFH of the value of its investments."[2] Id. While tortious interference can often be alleged as a direct claim by any party to a contract, the key is the nature of the wrongs alleged, regardless of how they are framed. SemCrude, 796 F.3d at 319 (To the extent the Plaintiffs' claims are masked claims for a diminution in value of their limited partner units as a result of mismanagement, their claims are derivative of the claims.) For example, in In re Shubh Hotels Pittsburgh, LLC, a shareholder attempted to bring a cause of action against third parties for "tortuous [sic] interference with [Bisaria's] advantages [sic] business relationship with [the Debtor] . . . ." when the defendants allegedly induced a separate defendant to breach a loan agreement with the Debtor. 2011 WL 7109364, at *2 (Bankr. W.D. Pa. 2011). The court found that shareholder's complaint sought to recover for "alleged acts that directly injured the Debtor, not [the shareholder]." Id. Here, as with the counts listed above, the Plaintiffs have alleged no injury to themselves other than the loss in

---

[2] Count Eleven contains several allegations related to the interests of Tom Spinner, who is not listed as a Plaintiff in the Proposed Amended Complaint, so these allegations are not considered.

value of their investment (i.e. the loss in value of the corporation), and that injury is derived from the corporation's injury. Therefore, the Court will deny the Motion with respect to Counts Seven and Eleven, but will do so without prejudice to the Plaintiffs' right to seek authorization to replead these counts before the State Court without including any claims belonging to the Debtors.

Similarly, Count Thirteen alleges Breach of Fiduciary Duty against Garces for his conduct in relation to LCC, LQ, 213T Associates LLC, and other Debtor and non-debtor entities. The allegations in this count include Garces transferring funds from these entities to other entities solely owned by him and intermingling of profits. These allegations are very similar to those laid out Counts Fourteen, Fifteen and Seventeen, and the analysis of those counts is detailed above. The injury complained of is the loss in value of the investment entities. Dkt. No. 8. As with the previously discussed counts, this is a masked derivative claim. The corporations are the injured party, the Plaintiffs' injuries are derivative, recovery for which injury is shared among all shareholders on a pro rata basis.

The same allegations and injuries are alleged in Count Eighteen, which is framed as a claim for Unjust Enrichment against Garces and other Defendants, for conduct including the siphoning of funds from the Debtor and non-debtor entities. In each of these counts, the wrong alleged is the loss of value in the corporations' shares, and as such, these are injuries to the corporation, not to the individual shareholders. Therefore, to the extent Counts Six, Seven, Eleven, Thirteen, Sixteen and Eighteen make allegations or requests recovery from the Defendants for injury to the Debtors, this violates the Sale Order, and the Motion will be denied without prejudice to the Plaintiffs' right to seek authorization to replead these counts before the State Court without including any claims belonging to the Debtors.

Count Five of the Proposed Amended Complaint requires additional analysis. The

Plaintiffs allege Garces fraudulently induced SFH to pledge investment assets as securities under false pretenses, because he intended to use the assets as part of a corporate reorganization. Dkt. No. 8. Although fraudulent inducement appears to be a direct claim, if the claims are masked claims for a diminution in value of their limited partner units as a result of corporate mismanagement, the claims are actually derivative.

In SemCrude, the plaintiffs brought claims for fraudulent inducement. However, the court saw these as merely masked claims for diminution in value of their limited partner units as a result of mismanagement and as such, derivative claims. 796 F.3d 310. The court cited Lipton v. News Int'l, Plc, 514 A.2d at 1078 ("[W]e must look to the nature of the wrongs alleged in the body of the complaint, not to the plaintiff's designation or stated intention."). In contrast, in PNC Bank, N.A. v. Star Grp. Commc'ns, Inc., the district court found that claims for fraudulently inducing parties to sign personal guarantees were not barred by the derivative injury rule. 2017 WL 3638763, at *4 (D.N.J. Aug. 24, 2017). However, a personal guarantee makes the party personally liable and thus the plaintiffs could show an injury separate from diminution of value.

In Stoner v. Ford, 1974 WL 476 (N.D. Okla. Dec. 24, 1974), applying Oklahoma law, the court found that fraudulent inducement claim was a direct claim. The Third Circuit, interpreting that ruling, found that "inducing a particular individual to purchase stock may be a direct injury if the fraud injures neither the shareholders collectively nor the corporation." SemCrude, 796 F.3d at 320 n. 9. The court noted that in Ford, "the fraud complained of had its inception before the corporation was organized. It was a personal transaction between individuals." Id. (citing Johnson v. Render, 132 Okla. 169, 270 P. 17, 20-21 (1928)). The Third Circuit went on to compare that to the SemCrude facts, "where Kivisto's alleged misconduct induced contributions beyond the Oklahoma Plaintiffs' pre-existing equity interests, '[t]he misrepresentations that allegedly caused [their] losses injured not just [the Oklahoma Plaintiffs] but the corporation as a

whole.'" Id. (citing Smith v. Waste Mgmt., Inc., 407 F.3d 381, 384–85 (5th Cir. 2005); Big Lots

Stores, Inc. v. Bain Capital Fund VII, LLC, 922 A.2d 1169, 1177 (Del.Ch. 2006) ("[T]he main

dividing line between direct and derivative claims styled as 'fraudulent inducement,' [is] whether

the plaintiff has alleged some injury other than that to the corporation.")).

The Proposed Amended Complaint appears to allege the corporation existed at the time

of the alleged fraudulent inducement, because the basis for SFH pledging assets was a corporate

reorganization. Dkt. No. 8 ¶ 187. Further, although the Proposed Amended Complaint states that

the assets pledged were "SFH's investment assets," SFH did not identify those assets and it is not

discernable whether these assets belonged to SFH individually or were instead assets belonging

to corporations in which SFH had an ownership interest. Additionally, the alleged wrongdoing is

almost exclusively related to the management of the corporation, (i.e. not following the operating

agreements, and treating it as a larger enterprise). Most significantly, the losses complained of

are that "SFH lost . . . value in its ownership interest in the investment entities." Dkt. No. 8.

Thus, the Court finds that Count Five of the Proposed Amended Complaint brings a derivative

claim on behalf of some Debtors and will not be allowed. The Motion is denied as to the Count

Five of the Proposed Amended Complaint, without prejudice to the Plaintiffs' right to seek

authorization to replead the count before the State Court without including any claims belonging

to the Debtors.

In summary, the Motion is denied as to Counts One, Five, Six, Seven, Eleven, Thirteen,

Sixteen, and Eighteen of the Proposed Amended Complaint for the reasons discussed above.

However, the Court does so without prejudice to Plaintiffs' right to amend these counts so that

they do not violate the Sale Order or attempt to bring claims properly belonging to the Debtors'

estates.

3.  Claims to be remanded:
Counts 2 – 4, 8, 9, 10, 12, 19 – 26

Count Ten of the Proposed Amended Complaint alleges that when the SFH invested in GRGNY1 it was promised repayment of its investment through the operating agreement, and further that it was given guarantees of payment from GRGAC4, GRGChubb, and GRG2401, entities in the event of non-payment by GRGNY1. Dkt. No. 8. Further, the allegations in Count Ten include that Garces siphoned assets from, and pledged the assets of, the guarantors to M&T making them valueless, and that Garces knew at the time that the guarantors' assets would not be available to make the required payments. Id. Count Ten is labeled a claim for conversion, however, the facts alleged include allegations of fraudulent inducement and breach of guaranty.

The analysis of Count Ten turns on the guarantees. As noted above, "[t]o have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery." In re Ressler, 597 F. App'x 131, 135 (3d Cir. 2015).

Although labeled a claim for conversion, a claim for the siphoning of the Debtors' assets would be barred by the Sale Order for the reasons discussed above. However, SFH has alleged a direct personal injury in the form of the loss in value of the guarantees those Debtors executed. The loss of a guarantee of payment would be an direct personal injury, independent of the injury to the corporation of the lost funds and also would be unique to SFH, as no other shareholders would have a right to recover for guarantees received SFH.[3] In short, the loss of a guarantee of repayment would not simply be a different amount of loss, but would instead be a loss of a different kind from that suffered by investors at large when the value of the shares of the

---

[3] The Court notes that the factual allegations are not specific, and it is not certain if there was a guaranteed repayment, why this is not treated as a loan rather than an investment. The analysis may turn on whether the specific terms of the "guarantees", and whether they are unique to SFH.

corporation declined. See SemCrude, 796 F.3d at 319. These alleged facts would show a direct claim against Garces and would not be barred by the Sale Order, this would be a claim between non-debtors, over which the Court has no jurisdiction. See In re Resorts Int'l, Inc., 372 F.3d at 164. As discussed above, the Court makes no finding as to whether this claim would fail for any other reason. Therefore, as to the Count Ten of the Proposed Amended Complaint, the Motion will be denied without prejudice to the Plaintiffs' right to seek authorization to replead the count before the State Court.

The remaining counts of the Proposed Amended Complaint are Counts Two through Four; Eight; Nine; Twelve; and Nineteen through Twenty-Six. None of these involve claims that affect the Debtors' estates, nor do they attempt to bring claims that have been waived through the release language in the Sale Order. The Court does not make any ruling as to the standing of the Plaintiffs to bring these claims, whether the claims are futile nor otherwise pass upon their validity. The Court merely determines that these counts do not involve any Debtors, nor property of the Debtors' estates, and as such, they do not violate the Sale Order. As discussed above, the Court lacks jurisdiction to issue rulings on matters between non-debtors that do not have any conceivable effect on the Bankruptcy estates. Therefore, as to Counts Two through Four, Eight; Nine; Twelve; and Nineteen through Twenty-Six, the Motion will be denied without prejudice to the Plaintiffs' right to seek authorization to replead these counts before the State Court.

### E.    Remaining Matters

Regarding the Cross-Motion, the Court will deny this without prejudice. As noted, the Court has limited the scope of this decision to those matters which effect the Debtors' estates or violate the Sale Order. Therefore, the Court will not rule on any other arguments made by the Defendants in the Cross-Motion. The Defendants are free to raise these arguments before the State Court.

**Conclusion**

Bankruptcy courts have jurisdiction over a matter: (a) if the outcome could conceivably have any effect on the estate; or (b) to enforce their own orders. However, bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor. Celotex, 514 U.S. at 308 n.6 (1995). As such, this ruling is limited to those matters which either involve the Debtors' estates or violate the Sale Order. In this case, the Debtors have waived all claims against all parties to the Sale Order. Therefore, the Court denies the Motion with prejudice as to Counts Fourteen, Fifteen and Seventeen of the Proposed Amended Complaint. Each of these counts violates the Sale Order by bringing derivative claims on behalf of Debtors against parties to the Sale Order. Similarly, the Court denies the Motion as to Counts One, Five, Six, Seven, Eleven, Thirteen, Sixteen, and Eighteen of the Proposed Amended Complaint. Each of these violate the Sale Order by bringing derivative claims on behalf of Debtors against parties to the Sale Order. However, as these counts also bring claims on behalf of non-debtors, the Court denies the Plaintiffs' request without prejudice to permit the Plaintiffs to seek to amend these counts before the State Court so that they do not violate the Sale Order or attempt to bring claims properly belonging to the Debtors' estates. Finally, with regard to Counts Two through Four, Eight, Nine, Ten, Twelve, and Nineteen through Twenty-Six, the Court denies the Motion without prejudice. These counts are unrelated to the Debtors and so do not violate the release language in the Sale Order, the Court finds it appropriate for the State Court to determine the validity of the claims and the standing of the Plaintiffs to make such claims.

The Court further concludes that it is appropriate to remand the Action to the State Court because the Court does not have jurisdiction over the remaining parties to the complaint.

For the reasons discussed above, the Motion is Denied in Part, and Granted in Part. The

Cross-Motion is denied without prejudice. The Action is remanded to State Court.


Dated: July 9, 2019

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE